# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MIKRON DIGITAL IMAGING, INC.,     Case No. 2:16-cv-13134
a Michigan corporation,     Hon. Denise Page Hood

    Plaintiff,

v.

                          **JURY TRIAL DEMANDED**

OMEGA MEDICAL IMAGING, INC.,
a Florida corporation, and
OMEGAL MEDICAL IMAGING, LLC,
a Florida corporation, jointly and severally,

    Defendants.

---

**H. JOEL NEWMAN, PLLC**
H. Joel Newman (P38459)
hjn@hjoelnewman.com
370 E. Maple Road, 3rd Floor
Birmingham, Michigan 48009
Phone: 248.723.1238
*Attorneys for Plaintiff*

**ROSSMAN SAXE, P.C.**
Mark C. Rossman (P63034)
mark@rossmansaxe.com
Brian M. Saxe (P70046)
brian@rossmansaxe.com
2145 Crooks Road, Suite 220
Troy, Michigan 48084
Phone: 248.385.5481
*Attorneys for Plaintiff*

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Mikron Digital Imaging, Inc. ("Plaintiff" or "Mikron"), through its attorneys, H. Joel Newman, P.L.L.C. and Rossman Saxe, P.C., and for its First Amended Complaint and Jury Demand against Defendant Omega Medical Imaging, Inc. and Defendant Omega Medical Imaging, LLC ("Omega" or "Defendants"), states as follows:

### BASES OF LIABILITY AND DAMAGES

1. This case arises out of a breach of contract by Defendant Omega Medical Imaging, Inc. and Defendant Omega Medical Imaging, LLC.

2. Omega Medical Imaging, LLC is liable as both a successor in interest and a party directly liable on the contract for the reasons set forth below.

3. Defendants are also jointly and severally liable in tort for their tortious conduct in pushing Plaintiff Mikron out of two markets, one in Michigan and one in Illinois.

4. The parties' business relationship commenced in 2010, when Mikron and Omega Medical Imaging, Inc. entered into a contract entitled "Omega Medical Imaging, Inc. Three (3) Year Dealership Agreement." (This "Dealership Agreement" is attached hereto as Exhibit 1, and incorporated *in toto* by reference).

5. As set forth more fully below, within months of the execution of the contract between Mikron and Omega Medical Imaging, Inc., the officers and owners of Omega Medical Imaging, Inc. dissolved the company and transferred all

of its business interests (including the contract with Mikron) to Omega Medical Imaging, LLC.

6. For approximately 5 years, Omega Medical Imaging, LLC administered the contract, enjoyed the benefits of that contract, and ultimately breached the contract.

7. Since Omega Medical Imaging, LLC is a successor to the liabilities arising under the contract with Mikron, it is jointly and severally liable both as a successor in interest and also a party to the contract. Therefore, any reference to "Omega" herein shall be a collective reference to Omega Medical Imaging, Inc. and Omega Medical Imaging, LLC, which are alter egos of one another.

8. The Omega enterprise is a large manufacturer and distributor of sophisticated medical imaging equipment, such as X-ray C-Arm imaging systems for Cardiology and Interventional Endoscopy. Omega touts its acclaim on its website:

> We're the only manufacturer in the world who specializes in fluoroscopic systems designed from the ground up for special therapeutic procedures. Our list of growing references includes prestigious physicians and healthcare systems and providers around the world. We deliver high quality, performance, flexibility, ease-of-use and cost effective solutions right here in sunny Florida.

9. Unfortunately, Omega's dealings with Mikron were far from sunny. They were fraudulent and dishonest.

10. Plaintiff Mikron is a Michigan-based dealer of this medical imaging equipment, and, through tremendous effort and investment, Mikron developed a substantial customer base, which, as will be explained below, has been damaged by the tortious and otherwise unlawful conduct of Omega.

11. When Omega determined that it would be more profitable to shove Mikron out of the deal and deliver its imaging equipment "direct" to the purchasers, on August 4, 2016, Omega wrongfully terminated the Dealership Agreement and foisted an untenable and one sided "separation agreement" upon Mikron.

12. Then, Omega moved in on Mikron's customer base in the exclusive sales territories it had granted to its "channel partner" in the Dealership Agreement, essentially "cutting out the middle man" and usurping the fruits of Mikron's performance under the contract and its business relationships and expectancies.

## *JURISDICTIONAL ALLEGATIONS*

13. Plaintiff Mikron is a Michigan corporation with its principal place of business and registered office in Livonia.

14. Defendant Omega Medical Imaging, LLC is a Florida corporation with its principal place of business at 675 Hickman Circle, Sanford, Florida 32771, and it is liable on the Dealership Agreement both as a successor and as the

principal party in interest as it assumed administration of the contract and also received the benefits thereof.

15. Defendant Omega Medical Imaging, Inc. was a Florida corporation until the owners and officers of the company voluntarily dissolved it 75 days after the parties entered into the Dealership Agreement, and then continued the Dealership Agreement through Omega Medical Imaging, LLC, which administered the contract and received consideration thereunder. The operations of both Omega Medical Imaging, Inc. and Omega Medical Imaging, LLC were carried out at the same location on 675 Hickman Circle, Sanford, Florida 32771 and there was a complete continuity of enterprise between the two entities.

16. This Court has diversity jurisdiction over this matter pursuant to 28 USC § 1332 because it involves citizens of different states, and damages in excess of $75,000.

17. Venue is proper in this district under 28 U.S.C. § 1391 because: (i) Defendants conduct substantial business in this district and have intentionally availed themselves of the laws and markets of this district; and/or (ii) the majority of the acts and transactions giving rise to this action occurred in this district.

### *GENERAL ALLEGATIONS AND AVERMENTS OF FACT*

18. Plaintiff is a distributor and servicer of medical imaging equipment throughout the Midwest, and, in particular, in the regions of Michigan and

Northern Illinois, which constituted its exclusive territory to distribute and service Omega's products.

19. Over the years, Mikron has heavily invested in the development of a substantial customer base, which Omega has set out to usurp for its own benefit, to the detriment of Mikron.

20. Defendant Omega specializes in the manufacture of this imaging equipment, and it entered into the Dealership Agreement in order to move its product to and throughout the market in the exclusive territories it granted to Mikron.

21. It is believed that Omega has entered into similar contracts with other dealers throughout the country and world, and that it has engaged in a pattern and practice of terminating them once the market is developed and Omega could deliver "direct" with relative ease.

22. It is also believed that Defendants played a corporate shell game in order to insulate themselves from liability under the Dealership Agreement, both with respect to Plaintiff as well as other similarly situated parties.

23. The Dealership Agreement was perpetually renewable each year on the condition that Mikron met or exceeded a certain minimum annual sales performance, and Omega was not permitted to unilaterally terminate it at its discretion.

24. In 2015, Omega demanded that Mikron enter into an agreement under which it would pay substantial additional fees to Omega in direct contravention of the Dealership Agreement.

25. Mikron refused to enter into the new agreement.

26. Omega then threatened to start calling on Omega's customers directly and to interfere with Mikron's ongoing relationships and service contracts with Mikron's customers.

27. Omega has converted at least one account in Illinois, and possibly others.

28. On August 4, 2016, Omega issued a purported letter of termination, failing to cite any valid justification.

29. Omega also worked with another dealer to sell products inside Mikron's exclusive territory.

## COUNT I
## BREACH OF CONTRACT

30. Plaintiff restates all allegations as set forth herein.

31. As stated, on October 5, 2010, Defendant Omega Medical Imaging, Inc. entered into a valid and binding contract with Plaintiff Mikron concerning the sales and distribution of certain medical imaging equipment manufactured by Defendant in Florida.

32. Defendant Omega Medical Imaging, LLC is a successor to the liabilities under the Dealership Agreement, and also an alter ego and de facto party to the contract based on, *inter alia*, its conduct in both administering the contract, making representations that it was the responsible and liable party, and also by assuming all of the benefits of the contract.

33. The agreement was supported by good and valid consideration.

34. Mikron fully performed its obligations under the Dealership Agreement.

35. Defendant Omega breached its obligations under the Dealership Agreement, by, *inter alia*, terminating it and otherwise performing in bad faith, including by engaging in actions designed to squeeze Mikron out of the marketplace and withhold consideration it was due and by dissolving the contracting party and transferring the contract to a new entity.

36. As a direct and proximate result of Defendant Omega's breach of the Dealership Agreement, by this and other conduct, Plaintiff Mikron has incurred substantial damages for which both Defendants are jointly and severally liable.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## BUSINESS RELATIONSHIPS AND EXPECTANCIES

37. Plaintiff restates all allegations as set forth herein.

38. As stated, subsequent to the wrongful termination of the Dealership Agreement, Defendant Omega has moved into Plaintiff Mikron's exclusive markets.

39. As stated, Mikron invested substantial capital into developing these exclusive markets for purposes of delivering the Omega product, and in reasonable reliance on the various misrepresentations and concealments of fact.

40. As such, Mikron had very well established and valid business relationships and expectancies with actual and potential purchasers of Omega's product in Michigan and Northern Illinois.

41. In furtherance of its scheme to step into Plaintiff Mikron's markets and usurp its exclusive right to sell Omega product, Defendant Omega capitalized on its breach of contract by engaging in an intentional interference which induced or caused a breach or termination of the relationship or expectancy and even a conversion of at least one client account.

42. As a direct and proximate result of Defendant Omega's unlawful conduct, Plaintiff Mikron has incurred substantial damages, and both Defendants are jointly and severally liable.

43. Defendant Omega's conduct in furtherance of its schemes, as described herein, has at all times been wonton, willful, and malicious, thereby

9

causing substantial harm to the reputation of Plaintiff Mikron and warranting an award of exemplary damages.

44. The individual agents of Defendant Omega (not *yet* named as parties in this lawsuit) who have engaged in this tortious conduct are personally liable for all of their own torts.

## COUNT III
## UNJUST ENRICHMENT

*(Pled in the alternative to any express contract claims set forth herein)*

45. Plaintiff restates all allegations as set forth herein.

46. As set forth herein, Defendant Omega usurped a substantial amount of revenue (both present and prospective) from Plaintiff Mikron.

47. As such, Omega has been enriched to the detriment of Mikron in an inequitable manner, and its ill-gotten and converted gains should be fully and completely disgorged.

48. It is inequitable for Omega to retain those benefits without paying for them.

49. Therefore, Mikron is entitled to recover, among other things, the reasonable value of that which has been misappropriated by Omega.

## COUNT IV
## FRAUD BY MISREPRESENTATION AND CONCEALMENT

50. Plaintiff restates all allegations as set forth herein.

51. Alternatively, Omega Medical Imaging, LLC, through its duly appointed agents, and on its behalf, misrepresented by words and affirmative conduct that the Dealership Agreement was between Plaintiff and an active and solvent corporation.

52. In addition, Omega Medical Imaging, LLC concealed material facts from Mikron, including that it caused the contracting party, Omega Medical Imaging, Inc. to be dissolved and insolvent.

53. Indeed, throughout the term of the business relationship between the parties, and even though representatives and agents of Omega Medical Imaging, LLC were responsible for the administration of the Dealership Agreement and Omega Medical Imaging, LLC was the direct beneficiary on the contract, Defendants failed to disclose that the named party to the Dealership Agreement was made a defunct corporation.

54. It was not until after Omega Medical Imaging, LLC purported to terminate the Dealership Agreement (albeit wrongfully, and in breach of its contractual duties to Mikron) and Mikron commenced litigation as a result thereof that it represented, for the first time, and for the purpose of eluding liability, that Omega Medical Imaging, Inc. was a defunct company and the officers of Omega Medical Imaging, LLC could not accept service of the Complaint.

55. By this scheme of fraudulent misrepresentation and artifice (both by affirmative misrepresentation, concealment and unlawful silence when Defendants and their agents were duty-bound to disclose) Defendant Omega Medical Imaging, LLC sought to insulate itself from liability under the Dealership Agreement which it wrongfully terminated.

56. Put another way, Defendant Omega Medical Imaging, LLC implemented a corporate shell game by entering into a contract, and then almost immediately dissolving the contracting entity and carrying on performance under the contract for over 5 years until disavowing responsibility subsequent to a knowingly unlawful and bad faith termination of the contract.

57. Defendant Omega Medical Imaging, LLC, and its officers and directors, had an absolute duty to disclose that the contract was transferred to a new corporate entity, yet they failed to do so, concealing such fact from Mikron and only revealing it as part of a scheme to elude liability.

58. Defendants Omega Medical Imaging, Inc. and Omega Medical Imaging, LLC, and the various agents thereof, were at all relevant times fiduciaries of Mikron because they held various things of value in trust for the benefit of Mikron, including equipment, monies, and they had access to Mikron's proprietary and confidential information.

59. Thus, their duties of disclosure not only arose under the Dealership Agreement, including by its specific terms as well as obligations to perform the contract in good faith and fairly, but also as a result of the Defendants' positions as trustees and fiduciaries in relation to Mikron.

60. By withholding the fact that Mikron's contracting partner under the Dealership Agreement was put into dissolution and became insolvent, as the contract was secretly transferred to a newly created entity, Defendants and their agents engaged in a fraudulent scheme of artifice by both affirmative misrepresentation and silent fraud.

61. Mikron reasonably relied on all of Defendants' various frauds and proximately incurred damages as a result thereof.

62. All of Defendants' conduct was wonton, willful and malicious and caused harm to Mikron in a variety of ways, including to its reputation in the marketplace.

63. Defendants are liable for exemplary damages.

## COUNT V
## STATUTORY (MCL 600.2919a) AND COMMON LAW CONVERSION

64. Plaintiff restates all allegations as set forth herein.

65. By virtue of the position Defendants held with respect to access to Mikron's various trade secrets, customer lists and confidential business processes and methods, and also their control over the deliverables under the Dealership

Agreement, Defendants had unique access to the property of Mikron, including its accounts, and it was both a trustee and a fiduciary of Mikron.

66. The Defendants, acting in combination with each other and in furtherance of a fraudulent scheme and conspiracy, converted and retained various accounts of Mikron in Illinois.

67. The Defendants have exercised dominion and control over these specific revenues and diverted them to their own use and benefit without the consent of Mikron.

68. Mikron has ownership over and the right to immediate possession and control of these specific funds and assets that were, or should have been, payable to Mikron.

69. The Defendants have an obligation to now return to Mikron the specific funds they converted, irrespective of whether such funds have been defalcated by the Defendants, either individually or in combination with one another.

70. Upon information and belief, Defendants, along with the aid of various individuals not yet named herein as defendants, still possess and are aiding one another in the concealment of these misappropriated and converted funds.

71. Defendants' illegal and wrongful conduct has at all times been wanton, willful, and malicious, and Mikron is therefore entitled to exemplary damages.

72. As a proximate result of Defendants' conversions, Mikron has incurred damages and is entitled to treble damages thereof.

## COUNT VI
## SUCCESSOR LIABILITY / DE FACTO MERGER / FRAUDULENT TRANSFER

73. Plaintiff restates all allegations as set forth herein.

74. It is believed that Defendant Omega Medical Imaging, LLC is a corporate successor of Defendant Omega Medical Imaging, Inc., and it is therefore liable for the debts and obligations of Defendant Omega Medical Imaging, Inc.

75. The dissolution of Defendant Omega Medical Imaging, Inc. and the transfer of all operations and assets to Defendant Omega Medical Imaging, LLC was an intentional and fraudulent attempt to avoid the loss of assets in the event of a breach of the Dealership Agreement.

76. It is believed that, on the date of the dissolution of Defendant Omega Medical Imaging, Inc., both Defendants were owned, managed, and controlled by the same persons.

77. Upon information and belief, all of Defendant Omega Medical Imaging, Inc.'s assets were conveyed to Defendant Omega Medical Imaging, LLC.

78. The owners and executives of Omega Medical Imaging, LLC retained possession and control of all assets of Omega Medical Imaging, Inc. before and after its dissolution.

79. After the dissolution, Omega Medical Imaging, Inc.'s employees, officers, executives and various other agents continued to be employed by Omega Medical Imaging, LLC.

80. There was a basic continuity of enterprise between Omega Medical Imaging, Inc. and Omega Medical Imaging, LLC.

81. Indeed, there is a continuation of Omega Medical Imaging, Inc. such that, within Omega Medical Imaging, LLC, there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation.

82. It is believed that Omega Medical Imaging, LLC directly or indirectly assumed all liabilities and obligations ordinarily necessary for the uninterrupted continuation of normal business operations of Omega Medical Imaging, Inc.

83. Omega Medical Imaging, LLC has either explicitly or implicitly assumed the liabilities of Omega Medical Imaging, Inc.

84. Alternatively, there has been a de facto merger between the Omega companies.

**WHEREFORE,** Plaintiff requests, as to all of the counts set forth herein, a joint and several Judgment against Defendants in whatever amount Plaintiff is found to be entitled, plus interest, costs and attorney fees, treble damages, and any other relief, including declaratory and injunctive, to which Plaintiff is found to be entitled.  Plaintiff further requests a trial by jury as to all counts set forth herein.

    Respectfully submitted,

    **H. JOEL NEWMAN, PLLC**
    *Attorneys for Plaintiff*

By:   s/ H. Joel Newman
    H. Joel Newman (P38459)
    hjn@hjoelnewman.com
    370 E. Maple Road, 3rd Floor
    Birmingham, Michigan  48009
    Phone:  248.723.1238


    **ROSSMAN SAXE, P.C.**
    *Attorneys for Plaintiff*

By:   s/ Mark C. Rossman
    Mark C. Rossman (P63034)
    mark@rossmansaxe.com
    Brian M. Saxe (P70046)
    brian@rossmansaxe.com
    2145 Crooks Road, Suite 220
    Troy, Michigan  48084
    Phone:  248.385.5481

Dated:  September 27, 2016