## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MIKRON DIGITAL IMAGING, INC.,

                Plaintiff,             CASE NO. 16-13134
                                           HON. DENISE PAGE HOOD

v.

OMEGA MEDICAL IMAGING, INC.,
OMEGA MEDICAL IMAGING, LLC,

                Defendants.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#11]

## I. BACKGROUND/FACTS

Plaintiff Mikron Digital Imaging, Inc. ("Mikron") commenced this action on August 30, 2016. On September 27, 2016, Mikron filed a First Amended Complaint against Defendants Omega Medical Imaging, Inc. ("Omega Inc.") and Omega Medical Imaging, LLC ("Omega LLC") (collectively "Omega"), which Mikron alleges are alter egos of one another, alleging breach of contract (Count I), tortious interference with business relationships and expectancies (Count II), unjust enrichment (Count III), fraud by misrepresentation and concealment (Count IV), statutory and common-law conversion (Count V), and successor liability / de facto merger / fraudulent transfer (Count VI). (Doc # 6) On October 25, 2016,

1

Defendant Omega LLC filed a Motion to Dismiss.  (Doc # 11).  Mikron filed a Response on November 18, 2016.  (Doc # 14)

The facts alleged in the First Amended Complaint are as follows.  Mikron is a Michigan corporation that sells, installs, and services medical imaging equipment in the Midwest.  (Doc # 6, Pg ID 29)  Omega Inc. is a now defunct Florida corporation that manufactured and distributed medical imaging equipment.  *Id.* at 26-27.  In 2010, Mikron and Omega Inc. entered into a Dealership Agreement ("Agreement"), identifying Mikron as the Dealer, under which Mikron would sell Omega products in Michigan and northern Illinois.  *Id.* at 26; Doc # 9, Pg ID 47. The Agreement provides:  "This agreement shall automatically terminate exactly one year from the date of the last person or entity to sign this agreement.  At the termination of the Agreement and every year following the termination, DEALER may opt for a one-year extension if all sales goals are met and their account is current."  (Doc # 9, Pg ID 47)  The Agreement assigned Mikron a particular territory and stated:  "OMEGA agrees not to appoint any other dealer in the territory as long as DEALER meets or exceeds the minimum annual sales performance of complete systems as detailed below."  *Id.*  The Agreement required Mikron to sell one system in the first year, two systems in the second year, and two systems in the third year.  *Id.*  The Complaint alleges that the Agreement was perpetually renewable each year on the condition that Mikron met or exceeded

sales goals, and that Omega Inc. could not unilaterally terminate the Agreement at its discretion.  *Id.* at 30.

Omega LLC is a Florida company that manufactures, markets, and sells its medical imaging equipment in the United States and abroad.  (Doc # 6, Pg ID 27) The Complaint alleges that some months after the execution of the Agreement between Mikron and Omega Inc., the officers of Omega Inc. voluntarily dissolved the company and transferred all of its business interests, including the Agreement with Mikron, to Omega LLC. Omega LLC administered the Agreement and enjoyed the benefits of the Agreement for approximately five years.  *Id.* at 26-27. The operations of Omega Inc. and Omega LLC were carried out at the same address in Florida, "and there was a complete continuity of enterprise between the two entities."  *Id.* at 29.   Omega LLC allegedly failed to disclose to Mikron the transfer of the Agreement from Omega Inc. to Omega LLC until after the filing of this lawsuit.  *Id.* at 35.

In 2015, Omega LLC allegedly demanded that Mikron enter into a new agreement under which Mikron would pay substantial additional fees to Omega LLC in contravention of the 2010 Agreement.  *Id.* at 31.  Mikron refused to enter into the new proposed agreement.  *Id.*  By this point, Mikron had allegedly invested heavily in the development of a substantial customer base for Omega products.  *Id.* at 30.  Omega LLC allegedly has access to Mikron's customer lists

3

and confidential business processes and methods.  *Id.* at 37.  The Complaint alleges that after Mikron refused to enter into the new proposed agreement, Omega LLC threatened to call customers directly and to interfere with Mikron's ongoing business relationships and service contracts with Mikron's customers.  *Id.* at 31. Omega LLC has allegedly "converted at least one account in Illinois, and possibly others."  *Id.*  On August 4, 2016, Omega LLC issued a letter of termination of the Agreement allegedly failing to cite any valid justification.  *Id.*  Omega LLC has also allegedly worked with another dealer to sell products inside Mikron's exclusive territory.  *Id.* The Complaint alleges that "Mikron fully performed its obligations under the Dealership Agreement."  *Id.* at 32.

The Complaint alleges that Omega played a corporate shell game in order to insulate themselves from liability under the Agreement.  *Id.* at 30.  Omega allegedly concealed from Mikron that Omega Inc. was dissolved and insolvent, and Omega LLC carried on performance under the Agreement for years until it wrongfully terminated the Agreement in bad faith, and then disavowed responsibility under the Agreement.  *Id.* at 36.  Mikron alleges that Omega usurped the fruits of Mikron's performance with the intention to squeeze Mikron out of the marketplace and withhold the consideration that Mikron was owed under the Agreement.  *Id.* at 28, 32.

## II. ANALYSIS

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  This type of motion tests the legal sufficiency of the plaintiff's complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  A court, however, need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice."  *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level… ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007).  To survive dismissal, the plaintiff

2:16-cv-13134-DPH-SDD   Doc # 17   Filed 01/26/17   Pg 6 of 20   Pg ID 113

must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal citations and quotations omitted). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## B. Breach of Contract Claim (Count I)

Omega LLC argues that Count I should be dismissed because Omega did not have a valid contract with Mikron, and Omega did not breach the contract with Mikron. Omega LLC argues that Mikron had not actually met its sales goals or opted to extend the Agreement, and Mikron's sole allegation that it "fully performed its obligations" without a valid explanation is not sufficient to survive a Motion to Dismiss. Omega LLC further argues that it did not wrongfully terminate

the Agreement because there was no valid agreement between the parties at the time that Omega LLC terminated its relationship with Mikron.

Mikron argues that its allegations of the existence of a valid and binding contract and of Mikron fully performing its obligations under the contract are enough to state a valid breach of contract claim. Mikron asserts that Omega breached the valid Agreement when it wrongfully terminated the Agreement without valid justification.

To state a claim for breach of contract in Michigan, a plaintiff must allege: (1) the existence of a valid contract, (2) the terms of the contract, (3) breach of the contract, and (4) an injury caused by the breach. *See Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id.* If the intent is clear from the language of the contract itself, there is no place for further construction or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87 (1994).

"Express provisions for termination govern a contract and courts cannot create a contractual liability where the express intent of the parties was to terminate the agreement upon a given condition." *E3A v. Bank of America, N.A.*, No. 13-10277, 2013 WL 1499560, at *2 (E.D. Mich. Apr. 11, 2013).

Turning to the Agreement in this case, attached to the Complaint, Section 1.1 expressly states that the Agreement automatically terminated exactly one year from the date of the last person or entity to sign the Agreement. (Doc # 9, Pg ID 47). The date appearing on the signature page is "10/5/10." *Id.* at 51. Under the aforementioned clear and unambiguous provision, the Agreement automatically terminated one year later, on 10/5/11. Section 1.1 of the Agreement then expressly provides that "[a]t the termination of the Agreement and every year following the termination, [Mikron] may opt for a one-year extension if all sales goals are met and their account is current." *Id.* at 47. Under this clear and unambiguous provision, Mikron had the option of extending the Agreement each year if all sales goals were met and Mikron's account was current. The Complaint does not allege that Mikron met the unambiguous contractual conditions, namely that Mikron met all sales goals and that Mikron's account was current. Mikron has failed to allege any facts from which the Court may infer that Mikron was entitled to another one-year extension. It follows that the Court cannot infer the existence of a valid

8

contract between Mikron and Omega at the time of the termination, or that Omega breached a valid contract by wrongfully terminating it.

Mikron's naked assertion that it "fully performed its obligations under the Dealership Agreement" without any further factual enhancement is not sufficient to raise Mikron's right to relief above the speculative level, as required to survive a Motion to Dismiss. The Court concludes that Mikron has failed to state a claim for breach of contract. The Court dismisses Count I.

## C. Tortious Interference with Business Relationships and Expectancies Claim (Count II)

Omega LLC argues that Count II should be dismissed because Omega did not have a valid contract with Mikron, so Mikron did not have exclusive control of a geographic market at the time that Omega terminated its relationship with Mikron. Omega LLC further argues that Mikron has not alleged this claim with sufficient specificity and has merely provided a formulaic recitation of the elements of tortious interference.

Mikron argues that that the Complaint alleges each element of tortious interference with sufficient specificity, including alleging unethical conduct on Omega's part in the form of wrongful termination of the Agreement followed by Omega's use of Mikron's established customer relationships for Omega's own profit.

To establish a claim for tortious interference of a business relationship in Michigan, a plaintiff must show:  (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) the defendant intentionally causing or inducing a breach or termination of the relationship or expectancy; and (4) resultant actual damage to the plaintiff.  *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 217 Mich. App. 687, 698-99 (1997).  A plaintiff is required to allege that a defendant acted with malice and the actions were unjustified in law for the purpose of invading the contractual rights or business relationship of another.  *Feldman v. Green*, 138 Mich. App. 360, 369 (1984).  A plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive or interference. *BPS Clinical*, 217 Mich. App. at 699.  Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference.  *Id.*

The Complaint sufficiently alleges that Mikron had valid business relationships and expectancies given the allegations that Mikron had been selling Omega products in Michigan and Illinois for five years and had invested heavily in the development of a substantial customer base for Omega products.   The Complaint sufficiently alleges knowledge of the valid business relationships and expectancies given the allegation that Omega had access to Mikron's customer

lists. Regarding the third element of tortious interference, the Complaint alleges that after Mikron refused to enter into the new proposed agreement, Omega threatened to call customers directly and to interfere with Mikron's ongoing business relationships and service contracts with Mikron's customers. The Complaint also alleges that Omega "converted" at least one account in Illinois. Mikron argues that Omega used the breach of the Agreement to cut out Mikron and move in on the customer base that Mikron had developed over the years. Mikron also alleges that Omega's conduct was unethical because Omega wrongfully terminated the Agreement. However, as discussed above, the allegations in the Complaint cannot establish that Omega wrongfully terminated the Agreement or that there was a valid agreement in place granting Mikron an exclusive territory at the time that Omega terminated its relationship with Mikron. The Court finds that Mikron has not alleged with sufficient specificity affirmative acts by Omega that corroborate an improper motive or interference. The Complaint lacks any specific allegation that Omega resorted to unlawful methods of competition or used means that were unjustified in law for the purpose of invading Mikron's customer base.

While Mikron's allegation may be consistent with Omega's liability, the allegations have fallen short of the line between possibility and plausibility of entitlement to relief. The Court concludes that Mikron has failed to state a claim

for tortious interference with business relationships and expectancies.  The Court dismisses Count II.

### D. Unjust Enrichment Claim (Count III)

Omega LLC argues that Count III should be dismissed because there are no allegations in the Complaint addressing how Omega "usurped a substantial amount of revenue (both present and prospective)" from Mikron by merely terminating a relationship with one of its dealers, which it was authorized to terminate.  Omega LLC further argues that Mikron fails to identify any "ill-gotten and converted gains" allegedly retained by Omega.

Mikron argues that it properly alleged that Omega received an unearned benefit through Mikron's investments in developing its customer base.

To establish a claim for unjust enrichment in Michigan, a plaintiff must show:  (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff because of the defendant's retention of the benefit.  *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478 (2003).  "If both elements are established, Michigan courts will then imply a contract to prevent unjust enrichment.  However, a contract will not be implied where an express contract governing the same subject matter exists."  *Joseph v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 12-12777, 2013 WL 228010 (E.D. Mich. Jan. 22,

2013).  "Where a contract governs the relationship of the parties, a cause of action for unjust enrichment will not be recognized."  *E3A*, 2013 WL 1499560, at *4.

Despite Mikron pleading a benefit upon Omega and a corresponding inequity resulting from the conferral of this benefit, Mikron's unjust enrichment claim fails as a matter of law.  The relationship between Mikron and Omega, including their rights and obligations, was governed by the Dealership Agreement. Under the Agreement's express provisions for termination, the Agreement automatically terminated on 10/5/11, and then Mikron had the option of extending the Agreement each year if all sales goals were met and Mikron's account was current.  After a five-year relationship between the parties, Omega terminated the Agreement in 2016.  As discussed above, Mikron has failed to allege any facts from which the Court may infer that Mikron was entitled to another one-year extension of the Agreement.  Omega's access to Mikron's customer list and the exclusivity of Mikron's sales territory were all part of the subject matter governed by the express Agreement.  The Court declines to imply another contract between Mikron and Omega under an unjust enrichment theory, as that would circumvent the express intent of the parties to terminate Mikron's ability to opt for an extension of the Agreement if Mikron did not meet certain express conditions, which as discussed above, Mikron has not alleged it met.

13

The Court concludes that Mikron has failed to state a claim for unjust enrichment. The Court dismisses Count III.

### E. Fraud by Misrepresentation and Concealment (Count IV)

Omega LLC argues that Count IV should be dismissed because the allegations in the Complaint do not meet the particularity requirements of Rule 9(b). Mikron argues that that the Complaint alleges each element of fraud by misrepresentation and concealment with sufficient particularity.

The Sixth Circuit has interpreted Rule 9(b) of the Federal Rules of Civil Procedure as requiring a plaintiff to allege the time, place, and content of the alleged misrepresentation on which they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).

Mikron alleges that the fraudulent misrepresentation in this case was the affirmative conduct of Omega in the form of silent fraud. The Complaint identifies the speaker as Omega, and the time as the entire five-year relationship between Omega and Mikron beginning when Omega Inc. was dissolved a few months after the execution of the agreement, allegedly unbeknownst to Mikron. The Complaint alleges, without any additional details, that Omega's agents "misrepresented by words an affirmative conduct that the Dealership Agreement was between Plaintiff

14

and an active and solvent corporation," Omega Inc.  The Complaint further alleges that Omega LLC concealed that it caused Omega Inc., the contracting party, to be dissolved and insolvent.  Mikron alleges that Omega LLC had a duty to disclose this information because it was a fiduciary of Mikron.  The Complaint alleges that Omega engaged in this fraudulent scheme and corporate shell game in order to disavow responsibility under the Agreement after wrongfully terminating it. Mikron alleges that it "reasonably relied on all of Omega's various frauds and proximately incurred damages as a result thereof."

The Court finds that the Complaint is short on specifics.  While it alleges the content of the misrepresentation and concealment, as well as a fraudulent scheme and intent, the Complaint only generally identifies Omega as the speaker and very generally alleges that the misrepresentation and concealment "permeated throughout the entire five-year relationship" with Mikron.  Mikron generally alleges that the alleged fraud induced Mikron to erroneously believe that it had a valid agreement with a functioning business entity.  However, the Complaint does not specifically allege how Mikron reasonably relied on the alleged fraud or how the alleged fraud proximately caused any alleged injury to Mikron.  Mikron's obligation to provide the grounds of its entitlement to relief requires more than a formulaic recitation of the elements of a cause of action.

The Court concludes that Mikron has failed to state a claim for fraud by misrepresentation and concealment.  The Court dismisses Count IV.

### F. Statutory and Common-Law Conversion Claim (Count V)

Omega LLC argues that Count V should be dismissed because Mikron fails to provide any factual support to its allegations of conversion, failing to even identify which accounts were allegedly converted by Omega.  Mikron argues that it properly alleged that Omega converted at least one account belonging to Mikron, using Mikron's trade secrets and other information.

"Common-law conversion consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Pollard v. J.P. Morgan Chase Bank*, NA, 50 F. Supp. 3d 829, 834-35 (E.D. Mich. 2014) (internal quotations omitted).  Statutory conversion under Michigan law consists of "[a]nother person's stealing or embezzling property or converting property to the other person's use."  M.C.L. § 600.2919a.

The Complaint alleges that Omega LLC has "converted and retained various accounts of Mikron in Illinois," and that Omega LLC has "exercised dominion and control over these specific revenues and diverted them to their own use and benefit without the consent of Mikron."  Mikron asserts that it has ownership over and

right to "these specific funds and assets that were, or should have been, payable to Mikron," and that Omega has "an obligation to return to Mikron the specific funds they converted."

Mikron has not offered sufficient factual allegations to make the conversion claim plausible on its face, as this would require more than more than legal conclusions and a formulaic recitation of the elements.  The Complaint does not identify which specific revenues, assets, and Illinois accounts, over which Mikron has *ownership*, have been converted.  The Complaint does not identify which "trade secrets" were used to allegedly convert any personal property of Mikron. Even if the Court inferred that Omega LLC had knowledge of Mikron's customers and directly solicited these customers after terminating the Agreement with Mikron, the act of soliciting cannot be construed as an act of dominion. "'Dominion' is a primary feature of ownership.  Soliciting involves asking potential clients if they are interested in the company's services. The permissive aspect of soliciting is inconsistent with the concept of ownership."  *Primary Ins. Agency Grp., LLC v. Nofar*, No. 320039, 2015 WL 1227767, at *3 (Mich. Ct. App. Mar. 17, 2015).

The Court concludes that Mikron has failed to state a claim for statutory or common-law conversion.  The Court dismisses Count V.

### G. Successor Liability / De Facto Merger / Fraudulent Transfer Claim (Count VI)

Omega LLC argues that Count VI should be dismissed because Mikron fails to allege this claim with the required particularities. Mikron argues that it properly alleged that Mikron did not receive notification that Omega Inc. was transferring all operations and assets to Omega LLC.

Michigan follows the traditional rule of nonliability for corporate successors who acquire a predecessor through the purchase of assets. *Foster v. Cone-Blanchard Mach. Co.*, 460 Mich. 696, 702 (1999).

> However, Michigan recognizes five narrow exceptions to the traditional rule of nonliability: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Stramaglia v. United States*, 377 Fed. App'x 472, 475 (6th Cir. 2010).

The Complaint alleges that there was a continuity of enterprise between Omega Inc. and Omega LLC.

> To determine whether a successor corporation is a mere continuation of its predecessor, Michigan courts examine the totality of the circumstances and engage in a multi-factor analysis. The only indispensable prerequisites to application of the exception appear to be common ownership and a transfer of substantially all assets. Besides these two factors, the most important consideration appears to be the nature of the business performed by the successor corporation—that is, whether its main corporate purpose was to conduct the same

business as its predecessor.  Several other factors         also bear upon
'mere continuation' analysis:  the new corporation's         retention of
the old corporation's officers and employees; the new
corporation's occupancy of the old corporation's place of business;
     and the new corporation's selective repayment of the old
         corporation's debts.

*Id.* at 475-76.

Taking the allegations in the Complaint as true, all operations and assets of Omega Inc. were transferred to Omega LLC.  Both Omega Inc. and Omega LLC were owned, managed, and controlled by the same persons.  The owners and executives of Omega LLC retained possession and control of all assets of Omega Inc.  Omega LLC retained Omega Inc.'s employees, officers, executives and various other agents.  There was complete continuity of enterprise between Omega Inc. and Omega LLC, including continuity of management, personnel, physical location, assets, and general business operations.  The main purpose of Omega LLC is to conduct the same business as its predecessor, Omega Inc.

Although the Complaint may establish that Omega LLC is a mere continuation of Omega Inc. and could be liable under a theory of successor liability, the Court dismisses Count VI.  Successor liability is an equitable doctrine that "serves as an alternative theory of liability and not an additional means to impose judgment."  *Morris v. Schnoor*, No. 315006, 2014 WL 2355705, at *44 (Mich. Ct. App. May 29, 2014).  As discussed above, each of Mikron's underlying

claims against Omega fail, and the successor liability claim cannot survive as a separate cause of action.

Lastly, although in its Response Mikron requests "leave to amend the Complaint to conform to the Court's requirements," the Court notes that a party may not make a motion within its response. E.D. Mich. Electronic Filing Policies and Procedures R 5(f).

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Omega Medical Imaging, LLC's Motion to Dismiss (Doc # 11) is GRANTED, and this action is DISMISSED.

IT IS FURTHER ORDERED that if Plaintiff Mikron Digital Imaging, Inc. seeks to amend the Complaint, such a motion to amend must be filed within fourteen days of the entry of this Order. E.D. Mich. LR 15.1.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: January 26, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 26, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager